```
                                    _____ FILED _____ ENTERED
                                    _____ LODGED _____ RECEIVED

                                         JUN 24 2024    MH

                                           AT SEATTLE
                                    CLERK U.S. DISTRICT COURT
                               BY   WESTERN DISTRICT OF WASHINGTON
                                                        DEPUTY
```

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* [SEALED],<br><br>　　　　Plaintiff,<br><br>　　　　　　– Against –<br><br>[SEALED],<br><br>　　　　Defendant. | No.:<br><br>**FALSE CLAIMS ACT COMPLAINT**<br><br>and<br><br>**JURY DEMAND**<br><br>**[TO BE FILED UNDER SEAL]** |

**FILED IN CAMERA AND UNDER SEAL UNDER**
**31 U.S.C. § 3730(b)(2)**
**DO NOT POST ON ECF**
**DO NOT PUT IN PRESS BOX**

Stephen A. Teller, WSBA #23372
Teller Law
300 Lenora St. #1471
Seattle, WA 98121
(206) 324-8969

*Counsel for Plaintiff Relator*

COMPLAINT and **JURY DEMAND - 1**

FILED _____ ENTERED
LODGED _____ RECEIVED

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

JUN 2 4 2024    MH

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

UNITED STATES OF AMERICA *ex rel.*
DANIEL FOSTER,

    *Plaintiff,*

    v.

GORDON TRUCK CENTERS, a dba; and
FREIGHTLINER NORTHWEST, a dba; and
affiliated companies comprising them, namely
GORDON TRUCK CENTERS, INC. a
Washington Corporation; GORDON TRUCK
LEASING, LLC a Washington Corporation;
GTC EQUIPMENT FINANCE, LLC a
Washington Corporation; GORDON PACIFIC,
LLC; a Washington Corporation; and other
affiliated JOHN DOE companies to be
identified,

    Defendants.

No

**FALSE CLAIMS ACT
COMPLAINT**

and

**JURY DEMAND**

**[FILED UNDER SEAL]**

Relator hereby brings this action on behalf of the United States of America for violation of the False Claims Act for submitting a materially false application for a Paycheck Protection Program ("PPP") loan and related forgiveness, for which Defendants did not qualify. Defendants are a group of companies collectively operating truck sales and service dealerships and related businesses known as Gordon Truck Centers Dealer Family which are closely affiliated through shared control and management. This group is referred to herein as "Gordon Truck Centers." Gordon Truck Centers Inc., which is part of Gordon Truck Centers, fraudulently obtained a loan and forgiveness of over $8,400,000 from the Small Business Administration. Its application for a "first draw" PPP loan included material misstatements and/or omissions about the number of employees and/or affiliated company employees. It claimed to have 481 employees when in reality it had over 500 and was therefore ineligible.

COMPLAINT and JURY DEMAND - 2

Teller Law
300 Lenora St. #1471
Seattle, WA 98121
(206) 324-8969  steve@stellerlaw.com

The claims are further based on the facts and information set forth below:

## NATURE OF THE CLAIM

1.      Relator sues Defendants to recover treble damages and civil penalties on behalf of the United States of America for Defendants' false applications for PPP loans and forgiveness, which information was submitted in whole or in part to the Small Business Administration ("SBA") by and through Key Bank.

2.      Defendants knew that Gordon Truck Centers, Inc. itself had over 500 employees by each of the available methods of calculating the number of employees.

3.      In the alternative, Defendants knew their affiliated companies worked closely together with coordinated management, and had overlapping ownership with each other and with other companies in an affiliation which meant the Gordon Truck Centers, Inc.  PPP loan and forgiveness applications did not meet the established criteria set by the SBA to obtain the PPP loan or forgiveness, both due to size of the affiliated companies and lack of need for the funds.

4.      Defendants engaged in the submission of false claims to the United States in violation of the False Claims Act, 31 U.S.C. § 3729 *et seq.* ("FCA").

## PARTIES

A.      **Gordon Truck Centers (dba, *inter alia*, Freightliner Northwest)**

5.      Gordon Truck Centers identifies itself as a "Dealer Family", selling and leasing Freightliner, Western Star, Mitsubishi Fuso, and TrailerCraft products, and servicing these and similar medium and heavy duty commercial trucks and trailers.  The group operates under a variety of registered trade names including Freedom Truck Centers, Freightliner Northwest, Gordon Truck parts, Pacific Truck Centers, Selectrucks of Seattle, Valley Freightliner, Western Star Northwest and others in Washington, Oregon, Idaho, Hawaii, Alaska, and California.  In the relevant time frame of 2019 to 2020 it owned and operated a dozen dealerships.

COMPLAINT and JURY DEMAND - 3

6.      Gordon Truck Centers is comprised of a group of companies, including those referenced in the caption and others, and including those identified or partially identified below. Its headquarters address is 277 Stewart Road SW in Pacific, Washington.

7.      Exhibit A hereto is a true and correct copy of materials obtained from the Secretary of State of the State of Washington reflecting businesses operating out of the Gordon Truck Centers headquarters.  Each of these businesses is governed, owned and/or operated by Larry, Virginia, Steve and/or Scott Gordon, who are related to each other as close family.  Each of these is part of Defendant Gordon Truck Centers and/or the Gordon Truck Centers Dealer Family (referred to as Gordon Truck Centers herein).

8.      Gordon Truck Centers is, and its owners, employees, and constituent companies are, responsible for applying for the SBA loans referenced herein, seeking forgiveness of them, and for all other acts alleged herein which were taken by the corporations and individuals acting for its/their benefit and/or on its/their behalf.

9.      As a result of the fraud alleged herein, Gordon Truck Centers, through Gordon Truck Centers, Inc. obtained approximately $8,400,000 in funds which, as a large and prosperous group of heavy equipment dealerships whose owners had in 2013 sold a related company for $300,000,000, it did not need, and to which it was not entitled under the laws and rules applicable to the PPP, including but not limited to the affiliation, size, and need rules.

**B.      Gordon Truck Centers, Inc.**

10.      Gordon Truck Centers, Inc is a corporation organized under the laws of Washington State.  Its headquarters address is 277 Stewart Road SW in Pacific, Washington.

11.      Gordon Truck Centers, Inc has a number of affiliated companies including Gordon Truck Leasing, LLC, GTC Equipment Finance, LLC, Gordon Pacific, LLC, Gordon Medford, LLC, GB Truck Properties, LLC, and others which are operating together as Gordon

**COMPLAINT and JURY DEMAND - 4**

1   Truck Centers and/or under the trade names identified above.  Many of these are listed in Exhibit

2   A hereto.

3       12.    The fraudulent loan at issue in this lawsuit was taken out by Gordon Truck

4   Centers, Inc.  Specifically, on April 13, 2020, Gordon Truck Centers, Inc., was approved for a

5   first-draw PPP loan of $8,444,187 through KeyBank National Association (loan number

6   4586627106).

7       **C.    Gordon Truck Leasing, LLC, GTC Equipment Finance, LLC, and
           Gordon Pacific, LLC**

8

9       13.    Gordon Truck Leasing, LLC, GTC Equipment Finance, LLC, Gordon Pacific,

10  LLC are corporations organized under the laws of Washington State.  They all share the

11  headquarters address at 277 Stewart Road SW in Pacific, Washington, along with other related

12  companies.  These and other companies are operating together as Gordon Truck Centers and/or

13  under the trade names identified above.  They share common ownership and management and

14  are affiliated as that term is defined by SBA-related law and regulations.

15      **D.    "John Doe" Companies, Gordon Family**

16      14.    Gordon Truck Centers is a large and prosperous group of truck sales and service

17  dealerships and its employees, owned by Larry and Virginia Gordon and their family, including

18  Steve and Scott Gordon.  It has divided itself into parts (companies identified above) for various

19  purposes.  In 2013, the Gordons sold Gordon Trucking to Heartland company for $300,000,000

20  and began to expand their dealerships from 3 in 2013 to 12 in 2020.

21

22      15.    The PPP loan program was for small businesses.  Gordon Truck Centers, Inc.

23  took out a PPP loan, for which by size because of itself and its affiliates, and by its liquidity, it

24  was not eligible.  Additional parts of Gordon Truck Centers may exist and may have taken out

25  PPP loans and/or asked for forgiveness to which they were similarly not entitled.  By this

**COMPLAINT and JURY DEMAND - 5**

**Teller Law**
300 Lenora St. #1471
Seattle, WA  98121
(206) 324-8969   steve@stellerlaw.com

reference, Relator puts said John Doe Companies on notice that they are Defendants in this lawsuit and that discovery into their existence and nature may be pursued by the United States Government or by Relator, or both.

**E.    Relator – Daniel Foster**

16.    Mr. Foster is an American citizen residing in Germany who has investigated Gordon Truck Centers, including by retaining investigator(s) to interview a long term human resources employee with personal knowledge of its actual number of employees during the relevant time frame.

## JURISDICTION AND VENUE

17.    This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1345 because this action involves a federal question and the United States is plaintiff. This Court also has subject matter jurisdiction under 31 U.S.C. § 3732(a).

18.    The Court may exercise personal jurisdiction over Defendants under 31 U.S.C. § 3732(a). The Court has personal jurisdiction over Defendants because, by virtue of the scheme described herein, they transact business within this District.

19.    Venue is proper in this District under 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391(b) & (c) because Defendants transact business or can be found within this District and a substantial part of the events establishing the alleged claims arose in this District.

20.    No allegation in this Complaint is based solely on a public disclosure of allegations or transactions in a federal criminal, civil, or administrative hearing in which the Government or its agent is a party; in a congressional, administrative, or General Accountability Office, or other Government report, hearing, audit, or investigation; or from the news media. Rather, Relator is an original source. To the extent there has been such prior disclosure, Relator

COMPLAINT and JURY DEMAND - 6

caused that disclosure to be made by his report to the government, and remains an original source.

21.     Under 31 U.S.C. § 3730(b)(2), this Complaint was filed in camera and under seal and shall not be served on Defendants until the Court so orders.

## FACTS

I.     **Governing Law**

A.     **The Federal False Claims Act**

22.     The FCA imposes liability upon any person who "knowingly presents, or causes to be presented [to the Government] a false or fraudulent claim for payment or approval," "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim," or conspires to do so.  31 U.S.C. § 3729(a)(1).

23.     As of the date of filing, any person found to have violated these provisions is liable for a civil penalty of not less than $13,508 and not more than $27,018 for each such violation, plus three times the damage sustained by the Government.

24.     The FCA imposes liability where conduct is knowing or is "in reckless disregard of the truth or falsity of the information."  The law is clear that "no proof of specific intent to defraud is required." 31 U.S.C. § 3729(b).

25.     The FCA also broadly defines a "claim" to include "any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that - … is made to a contractor, grantee, or other recipient if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest ... " 31 U.S.C. § 3729(b)(2)(A).

26.     The FCA empowers private persons having information regarding a false or fraudulent claim against the Government to sue on behalf of the Government and to share in any

COMPLAINT and JURY DEMAND - 7

1    recovery. The complaint must be filed under seal without service on any defendant. The

2    complaint remains under seal while the Government conducts an investigation of the allegations

3    and determines whether to intervene. 31 U.S.C. §3730(b).

4        27.    Relator alleges that the False Claims Act was violated in connection with

5    Defendants' application for a Paycheck Protection Program loans when Defendants violated the

6    size, affiliation and need rules of said Program, obtaining funds from the U.S. Government Small

7

8    Business Administration to which they were not entitled.

9      **B.**     **The Paycheck Protection Program**

10       28.    The Paycheck Protection Program ("PPP") is the United States Government

11    business loan program established in 2020 through the Coronavirus Aid, Relief, and Economic

12    Security Act ("CARES Act") to help certain businesses, self-employed workers, sole proprietors,

13    certain nonprofit organizations, veterans' organizations, and tribal businesses to continue paying

14    their workers. The program is implemented by the U.S. Small Business Administration ("SBA").

15       29.    The PPP allowed qualified entities to apply for low-interest private loans to pay

16    for their payroll and certain other operating costs. Under the PPP, the allowable amount of a PPP

17    loan was largely calculated based on the borrowing entity's average monthly payroll costs

18    multiplied by 2.5.[1]

19       30.    The PPP loan was intended to be used to cover only payroll costs, rent, interest,

20    and utilities.

21

22

23

24    [1] *See* How to Calculate Maximum Loan Amounts – by Business Type, U.S. Small Business

25    Administration, (Jun. 26, 2020) https://www.sba.gov/sites/default/files/2020-06/How-to-Calculate-Loan-Amounts-508_1.pdf (last visited September 7, 2022).

**COMPLAINT and JURY DEMAND - 8**

**Teller Law**
300 Lenora St. #1471
Seattle, WA 98121
(206) 324-8969   steve@stellerlaw.com

31.     The loan could be partially or fully forgiven if the business kept its employee counts and employee wages stable.  The SBA would pay off forgiven loan amounts to the lender, constituting income to the program participants.  False statements related to loans and forgiveness meant income to Defendants from the SBA through the lender.

32.     The deadline for entities to apply for a PPP loan was initially June 30, 2020, which was later extended to August 8, 2020.

33.     The PPP was reopened on January 11, 2021, for a "second draw" or second round of loans. The Program ended on May 31, 2021.[2]

34.     The PPP was added under Section 1102 of the CARES Act by amending Section 7(a) of the Small Business Act, 15 U.S.C. § 636(a) *et seq.*, which temporarily permitted the SBA to guarantee 100 percent of the PPP loans.

35.     Section 1106 of the CARES Act, which also amended Section 7(a), further provides for forgiveness of up to the full principal amount of qualifying loans guaranteed under the PPP.

### i.   *Affiliation Rules*

36.     The PPP loan program was designed and intended to benefit *small* businesses, and thereby to facilitate continued employment when funds might not otherwise be available to keep the economy going during the pandemic.  It was to be distributed to small businesses and based on need for funds.

---

[2] *See* Paycheck Protection Program, U.S. SMALL BUSINESS ADMINISTRATION, https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-program (last visited Dec. 9, 2021).

**COMPLAINT and JURY DEMAND - 9**

**Teller Law**
300 Lenora St. #1471
Seattle, WA  98121
(206) 324-8969  steve@stellerlaw.com

37. For the purposes of first "draw" or first round PPP loans, the relevant statutes and regulations generally defined small businesses as those entities with 500 or fewer employees.

38. SBA's existing affiliation rules applied to the PPP loan program's definition of small businesses. In other words, all employees of affiliated entities under the same ownership or control "count" towards the 500-employee limit. See "AFFILIATION RULES APPLICABLE TO U.S. SMALL BUSINESS ADMINISTRATION PAYCHECK PROTECTION PROGRAM" located at https://www.sba.gov/document/support-affiliation-rules-paycheck-protection-program

39. 13 C.F.R. 121.106 (a) sets out how the SBA calculates the number of employees, in pertinent part, as follows:

> (a) In determining a concern's number of employees, SBA counts all individuals employed on a full-time, part-time, or other basis. This includes employees obtained from a temporary employee agency, professional employer organization or leasing concern.

40. SBA regulations make clear that it is the average number of employees of the concern over a period of time that is used (including all domestic and foreign affiliates). 13 C.F.R. 121.106(b)(1). The CFR states that the average should be based on the preceding 24 calendar months, although other SBA guidance indicates a 12 month period may be used for PPP loans.

41. That section continues, making clear under 13 C.F.R. 121.106 (b)(4) that not only are the business's employees counted, but so are employees of any closely affiliated businesses. Such affiliations may be created in many ways, including but not limited to management agreements such as that between Body Contour Centers and Aesthetic Physicians. See "AFFILIATION RULES APPLICABLE TO U.S. SMALL BUSINESS ADMINISTRATION

**Teller Law**
300 Lenora St. #1471
Seattle, WA 98121
(206) 324-8969   steve@stellerlaw.com

PAYCHECK PROTECTION PROGRAM"[3] which states, "Affiliation also arises where a single individual, concern or entity controls the management of the applicant concern through a management agreement."

42.    Gordon Truck Centers operates as a single concern or entity, and it is owned and operated by a single family which includes Larry, Virginia, Steve, and Scott Gordon.

43.    At 13 CFR 121.103, the SBA described how it determines whether companies are closely enough affiliated such that each company's employees need to be counted for size eligibility purposes.  The section includes the following:

(1) Concerns and entities are affiliates of each other when one controls or has the power to control the other, or a third party or parties controls or has the power to control both. It does not matter whether control is exercised, so long as the power to control exists.

(2) SBA considers factors such as ownership, management, previous relationships with or ties to another concern, and contractual relationships, in determining whether affiliation exists.

(3) Control may be affirmative or negative. Negative control includes, but is not limited to, instances where a minority shareholder has the ability, under the concern's charter, by-laws, or shareholder's agreement, to prevent a quorum or otherwise block action by the board of directors or shareholders.

(4) Affiliation may be found where an individual, concern, or entity exercises control indirectly through a third party.

13 CFR §121.103(a).

44.    Additionally,

(e) Affiliation [may be] based on common management. Affiliation arises where one or more officers, directors, managing members, or partners who control the board of directors and/or management of one concern also control the board of directors or management of one or more other concerns.

(f) Affiliation [may be] based on identity of interest. Affiliation may arise among two or more persons with an identity of interest. Individuals or firms that have identical or substantially identical business or economic interests (such as family members,

---

[3] See https://www.sba.gov/document/support-affiliation-rules-paycheck-protection-program

**Teller Law**
300 Lenora St. #1471
Seattle, WA  98121
(206) 324-8969   steve@stellerlaw.com

individuals or firms with common investments, or firms that are economically dependent through contractual or other relationships) may be treated as one party with such interests aggregated. Where SBA determines that such interests should be aggregated, an individual or firm may rebut that determination with evidence showing that the interests deemed to be one are in fact separate.

> (1) Firms owned or controlled by married couples, parties to a civil union, parents, children, and siblings are presumed to be affiliated with each other if they conduct business with each other, such as subcontracts or joint ventures or share or provide loans, resources, equipment, locations or employees with one another. …

*Id.* at (e) and (f).

45. Additionally, "[a]ffiliation arises when there is an identity of interest between close relatives, as defined in 13 CFR 120.10, with identical or substantially, identical business or economic interests (such as where the close relatives operate concerns in the same or similar industry in the same geographic area)" See "AFFILIATION RULES APPLICABLE TO U.S. SMALL BUSINESS ADMINISTRATION PAYCHECK PROTECTION PROGRAM"[4] See also 13 CFR 120.10 (A "Close Relative   is a spouse; a parent; or a child or sibling, or the spouse of any such person.")

46. Additional similar affiliation rules regarding ownership are set forth at 13 C.F.R. § 121.301(f) following the reference that "The size of the applicant *combined with its affiliates* must not exceed the size standard designated …" See 13 C.F.R. § 121.301(a)(2) [emph. added].

47. The SBA repeatedly clarified that the affiliation rules, including those at 13 C.F.R. § 121.301(f) applied to PPP loans and that for the purposes of counting employees, all affiliated employees **must** be counted. For example, the SBA's March 12, 2021, FAQs included question 44 on this topic:

> 44. **Question:** How do SBA's affiliation rules at 13 C.F.R. 121.301(f) apply with regard to counting the employees of foreign and U.S. affiliates?

---

[4]  See https://www.sba.gov/document/support-affiliation-rules-paycheck-protection-program

**COMPLAINT and JURY DEMAND - 12**

**Teller Law**
300 Lenora St. #1471
Seattle, WA  98121
(206) 324-8969   steve@stellerlaw.com

**Answer:** For purposes of the PPP's 500 or fewer employee size standard (or 300 employee size standard for Second Draw PPP Loans and certain entities for First Draw PPP Loans), *an applicant must count all of its employees and the employees of its U.S and foreign affiliates*, absent a waiver of or an exception to the affiliation rules. 13 C.F.R. 121.301(f)(6). Business concerns seeking to qualify for a First Draw PPP Loan as a "small business concern" under section 3 of the Small Business Act (15 U.S.C. 632) on the basis of the employee-based size standard must do the same.

See March 12, 2021 SBA FAQs. (located at: https://www.sba.gov/sites/default/files/2021-03/PPP%20FAQs%203.12.21%20FINAL-508.pdf ) [emph. added].

48.    Relator alleges that the Defendants and other companies are closely affiliated under these rules and all employees of the related companies should have been counted as employees of Gordon Truck Centers, Gordon Truck Centers, Inc., or each other, thus making Defendants ineligible for PPP loans.

49.    The affiliation rules presented a special problem for certain industries which typically organize themselves as several nominally individual businesses owned or controlled by a single entity. To address this reality, Congress provided statutory carveouts for certain parts of the hospitality industry and some franchise businesses. *See* 15 U.S.C. § 636(A)(36)(D)(iv). Importantly, no such carveout exists for automobile or truck dealerships or for any Defendants here.

### ii.    *Rules Regarding Need*

50.    The SBA also clarified that one requirement for loans under the PPP was a good faith certification that the loan was necessary for the ongoing operations of the Applicant.

51.    For example, the SBA's March 12, 2021, FAQs included question 31 on this topic:

31. **Question:** Do businesses owned by large companies with adequate sources of liquidity to support the business's ongoing operations qualify for a PPP loan?

COMPLAINT and JURY DEMAND - 13

**Teller Law**
300 Lenora St. #1471
Seattle, WA 98121
(206) 324-8969  steve@stellerlaw.com

**Answer:** In addition to reviewing applicable affiliation rules to determine eligibility, all borrowers must assess their economic need for a PPP loan under the standard established by the CARES Act and the PPP regulations at the time of the loan application. Although the CARES Act suspends the ordinary requirement that borrowers must be unable to obtain credit elsewhere (as defined in section 3(h) of the Small Business Act), borrowers still must certify in good faith that their PPP loan request is necessary. Specifically, before submitting a PPP application, all borrowers should review carefully the required certification that "[c]urrent economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant." Borrowers must make this certification in good faith, taking into account their current business activity and their ability to access other sources of liquidity sufficient to support their ongoing operations in a manner that is not significantly detrimental to the business. For example, it is unlikely that a public company with substantial market value and access to capital markets will be able to make the required certification in good faith, and such a company should be prepared to demonstrate to SBA, upon request, the basis for its certification.

March 12, 2021 SBA FAQs  (https://www.sba.gov/sites/default/files/2021-03/PPP%20FAQs%203.12.21%20FINAL-508.pdf).  See also Question 46 (no safe harbor from good faith need representation for large loans) and footnote 58, stating "For purposes of this safe harbor, a borrower must include its affiliates to the extent required under the interim final rule on affiliates, [per] 85 FR 20817 (April 15, 2020)."

52.      The Gordon family, including Larry, Virginia, Scott, and Steve Gordon, sold their long haul trucking business in 2013 for $300,000,000.  At that time they had three dealerships. Within seven years they had added 9 more, as of the time of PPP loan application.  Thereafter they added another seven.  In other words, they had exactly the access to capital that SBA warned would invalidate the good faith certification of need.

53.      The SBA also often specifically warned potential borrowers that civil and criminal liability could attach to false applications.  *See e.g.,* 85 Fed. Reg. 20811 at 20814 (April 15, 2020).  Defendants were on notice that they had obligations to carefully review eligibility before applying and knowingly or recklessly disregarded their knowledge of their ineligibility and/or their duty to know.

**COMPLAINT and JURY DEMAND - 14**

**Teller Law**
300 Lenora St. #1471
Seattle, WA  98121
(206) 324-8969  steve@stellerlaw.com

**II.    The Gordon Truck Centers Companies are Affiliated Companies by Operation and Ownership.  They Are One Company Under SBA Rules**

54.    Gordon Truck Centers, Inc. and affiliated companies comprise the business known as Gordon Truck Centers and/or Freightliner Northwest.  It operates under multiple trade names, and currently owns 19 dealerships.

55.    The Gordon Truck Centers companies are owned by and/or subject to the control of the Gordon family.

56.    The Gordon Truck Centers companies are operated by the Gordon family, who manage and/or govern the companies.

57.    Many, if not all of the Gordon Truck Center companies are operated out of the Gordon Truck Centers, Inc. address and share space with the Gordon Truck Centers, Inc., "Freightliner Northwest" dealership at 277 Stewart Rd. SW, in Pacific, Washington.  See Exh. A.

**III.    Number of Employees for Gordon Trucking Centers**

58.    Gordon Truck Centers claimed on the PPP loan application that it had 481 employees, but it in fact had more than 500 employees..

59.    Gordon Truck Centers, Inc. alone had over 500 employees in its retirement plan at the beginning and end of 2019 and the beginning of 2020, and over 500 employees in its life insurance plan at the end of 2019.

60.    Covid lockdowns began in March 25, 2020 in Washington State, and Gordon Truck Centers, Inc filed its application for the loan on April 20, 2020, so the pandemic's impact on the average number of employees in the preceding pay periods is minimal.

61.    An HR Generalist and recruiter was interviewed and asserted that during the pandemic around 600 employees remained working for Gordon Truck Centers.

COMPLAINT and JURY DEMAND - 15

**IV.    Lack of Need for PPP loans**

62.    Gordon Truck Centers both had adequate liquidity and/or access to liquidity to function through the pandemic without taking these loans.

63.    Gordon Trucking, Inc. was owned by the Gordon family, and sold for $300,000,000 in 2013.  At that time the Gordons owned three truck dealerships.  By 2020 they owned 12, having purchased or founded 9 more in the intervening seven years.  After taking the PPP loan they continued expanding at an even greater rate, with seven more dealerships from 2021 through 2024.

64.    The history of the founding and sale of Gordon Trucking by the Gordon Truck Center owners and expansion of the "Dealer Family" of businesses makes clear that it/they did not have any lack of access to capital, and did not need the PPP loans.

65.    Defendants certifications of need were not made in good faith.

**V.    Violations of the False Claims Act**

66.    The omission of the number of employees in the affiliated companies was material to the SBA, including as evidenced by the significant rules and guidance promulgated by SBA before and during the pandemic, and those related to PPP loans.

67.    The false certifications of need were also material to the SBA, as evidenced by the same guidance, including those quoted herein, and other factors.

68.    The Gordon Truck Centers companies (through Gordon Truck Centers, Inc.) falsely certified loan and forgiveness applications by failing to identify their affiliation and thereby understating their employees.  Had they stated the full number of employees, the loans would not have been granted.

COMPLAINT and JURY DEMAND - 16

69.     Additionally, the Gordon Truck Centers companies had no need for the PPP funds and could have obtained any funds they did need from capital markets, The Gordon family, and/or other sources.  Had they truthfully stated that they did not need the money, the loans would not have been granted.

70.     Defendants violated the False Claims Act by submitting materially false applications and supporting materials in connection with applications for PPP loans and then forgiveness of those loans.

**A.      PPP Loans and Forgiveness Granted to Defendants**

71.     Defendants applied for and obtained a PPP loan and forgiveness to which they were not entitled.

72.     To do so, Gordon Truck Centers, Inc. certified on its loan application that it had under 500 employees and that it had a need for the loan.  Both certifications were false.

73.     On April 13, 2020, Gordon Truck Centers, Inc., was approved for a first-draw PPP loan of $8,444,187 through KeyBank National Association (loan number 4586627106).  It claimed (i.e., "certified") 481 employees on the application.

74.     On March 8, 2022, Gordon Truck Centers, Inc. applied for and received loan forgiveness of $8,601,966.06 (the full loan amount plus interest).  The SBA also paid KeyBank a lender processing fee of approximately $84,441 associated with the loan.

***"John Doe" Companies***

75.     Additional companies associated with Gordon Truck Centers may have taken loans and obtained forgiveness in violation of the affiliation and need rules.

76.     Lender Processing Fee payments to Key Bank were caused by Defendants' false statements and omissions and fraud.  They would not have been expended if Defendants had

COMPLAINT and JURY DEMAND - 17

1  made accurate statements in the loan and forgiveness applications and are therefore an element

2  of the damages in this matter.

3  **B.    <u>Knowingly False Statements</u>**

4  77.    Each of the above-described PPP loan and forgiveness applications constitute

5  false claims.

6  78.    Each of the above-described PPP loan and forgiveness applications are false

7  because they make, at a minimum, the false statements referenced below:

8
9      a. Gordon Truck Centers, Inc. was too large to be eligible for a loan, or in the
          alternative, the number of jobs reported does not account for the SBA's affiliation
10         rules and thereby meaningfully and falsely underreport the number of jobs or
           employees in the Gordon Truck Centers Dealer Family;

11     b. Upon information and belief, the applications falsely attest that each company
12        needed the funds and lacked access to other sources of liquidity; and

13     c. Upon information and belief, the applications falsely attest to compliance with the
          Paycheck Protection Program and entitlement to the PPP loan and forgiveness
14        funds.

15  79.    In reality, each of the Defendant companies that obtained PPP loans are affiliated

16  with each other and with the Gordon family and Gordon Truck Centers as the word "affiliation"

17  is defined and used in the relevant SBA regulations.

18  80.    In every year between 2019 and 2022, Defendants, including affiliates, had over

19  500 employees, making the loan and forgiveness applications false insofar as Defendants

20  reported a smaller number of employees than was accurate.

21  81.    As a result, none of the Defendant Companies that applied for and received PPP

22  and forgiveness monies qualified for PPP loans or forgiveness, making each of the applications

23  false at least insofar as each reported or attested to compliance with the PPP loan and forgiveness

24  program rules, regulations, and laws.

25

**COMPLAINT and JURY DEMAND - 18**

## CAUSES OF ACTION
## COUNT I
### Violations of the False Claims Act: Presenting or Causing a False Claim
### (31 U.S.C. § 3729(a)(1)(A))

82. The foregoing allegations are repeated and realleged as if fully set forth herein.

83. The False Claims Act, 31 U.S.C. § 3729(a)(1)(A), imposes liability upon those who knowingly present or cause to be presented false claims for payment or approval.

84. Defendants knowingly, recklessly and/or willfully violated the False Claims Act by presenting, or causing to be presented, false claims for payment or approval.

85. Specifically, and as alleged in more detail above, Defendants presented, or caused to be presented, materially false applications for PPP loan funds and then for forgiveness of the resulting loan(s).

86. Defendants certified compliance with applicable PPP laws, rules, and regulations despite not being compliant.

87. Defendants similarly certified the existence of facts which were not true.

88. Defendants knew or should have known (as defined in 31 U.S.C. § 3801(a)(5)) that the facts and certifications to which they attested were not true and that they made, presented, or submitted, or caused to be made, false or fraudulent claims for payment to the government.

89. Each of the applications submitted or caused to be submitted by Defendants is a separate false and fraudulent claim.

90. Defendants presented or caused to be presented these claims knowing their falsity, or in deliberate ignorance or reckless disregard that such claims were false.

91. The United States was unaware of the foregoing circumstances and conduct of Defendants and, in reliance on said false and fraudulent claims, authorized payments to be made

COMPLAINT and JURY DEMAND - 19

1    to or on behalf of Defendants, including Gordon Truck Centers, Inc., made such payments, and

2    has been damaged.

3        92.    Because of these false or fraudulent claims submitted or caused to be submitted

4    by Defendants, the United States has been damaged in an amount to be determined at trial.

5                                   **COUNT II**
6                    **Violations of the False Claims Act:**
       **Making, Using, or Causing to be Used a False Record or Statement**
7                        **(31 U.S.C. § 3729(a)(1)(B))**

8        93.    The foregoing allegations are repeated and realleged as if fully set forth herein.

9        94.    The False Claims Act, 31 U.S.C. § 3729(a)(1)(B), imposes liability upon those

10    who knowingly make, use, or cause to be made or used, false records or statements material to a

11    false or fraudulent claim.

12        95.    Defendants knowingly, recklessly and/or willfully violated the False Claims Act

13    by making, using, or causing to be made or used, false records or statements material to false or

14    fraudulent claims.

15        96.    Specifically, for purposes of obtaining or aiding to obtain PPP loan(s) and then

16    forgiveness of said loan(s), Defendants made or presented, or caused to be made or presented, to

17    the United States false or fraudulent applications and/or records, knowing these materials to be

18    false or fraudulent, or acting with reckless disregard or deliberate ignorance thereof.

19

20        97.    Each application or record submitted to the Government in support of

21    Defendants' above-described false claims is a separate false record or statement and separate

22    violation of 31 U.S.C. § 3729(a)(1)(B).

23        98.    The United States was unaware of the foregoing circumstances and conduct of

24    Defendants and, in reliance on said false and fraudulent applications and/or records, authorized

25

**COMPLAINT** and **JURY DEMAND** - 20

payments to be made to or on behalf of Defendants, made such payments, and has been damaged.

99.    Because of these false or fraudulent statements submitted or caused to be submitted by Defendants, the United States paid the claims, resulting in damages to the United States in an amount to be determined at trial.

**COUNT III**
**Violations of the False Claims Act: Obligation to Repay**
**(31 U.S.C. § 3729(a)(1)(G))**

100.    The foregoing allegations are repeated and realleged as if fully set forth herein.

101.    The False Claims Act, 31 U.S.C. § 3729(a)(1)(G), imposes liability upon those who knowingly make, use, or cause to be made or used, false records or statements material to an obligation to pay or transmit money or property to the Government, or conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government.

102.    Upon receipt of improperly obtained PPP loan and/or forgiveness funds, Defendants had an obligation to repay and refund to the Government the amounts paid by the government.

103.    Defendants knowingly, recklessly and/or willfully violated the False Claims Act by failing to so repay or refund the monies received.

104.    The United States was unaware of the foregoing circumstances and conduct of Defendants.

105.    Had the government been aware of Defendants' knowing false certifications and knowing failure to return overpayments it would have taken steps to recover them.

106.    The United States has been damaged as a result in an amount to be determined at trial.

**COMPLAINT and JURY DEMAND - 21**

## COUNT IV
### Violations of the False Claims Act:
### Conspiring to Commit a Violation
### (31 U.S.C. § 3729(a)(1)(C))

1.     The foregoing allegations are repeated and realleged as if fully set forth herein.

2.     The False Claims Act, 31 U.S.C. § 3729(a)(1)(C), imposes liability upon those who conspire with others to knowingly present or cause to be presented false claims for payment or approval.

3.     Defendants knowingly, recklessly and/or willfully violated the False Claims Act by presenting, or causing to be presented, false claims for payment or approval.

4.     Specifically, and as alleged in more detail above, Defendants, by and through their employees, conspired to present, or cause to be presented, materially false applications for PPP loan funds and then for forgiveness of the resulting loans.

5.     Defendants conspired to certify compliance with applicable PPP laws, rules, and regulations despite not being compliant.

6.     Defendants conspired to similarly certify the existence of facts which were not true.

7.     Defendants knew or should have known (as defined in 31 U.S.C. § 3801(a)(5)) that the facts and certifications to which they attested were not true and that they made, presented, or submitted, or caused to be made, false or fraudulent claims for payment to the government.

8.     Each of the applications submitted or caused to be submitted by Defendants is a separate false and fraudulent claim.

9.     Defendants conspired to present or cause to be presented these claims knowing their falsity, or in deliberate ignorance or reckless disregard that such claims were false.

**COMPLAINT and JURY DEMAND - 22**

10.    The United States was unaware of the foregoing circumstances and conduct of Defendants and, in reliance on said false and fraudulent claims, authorized payments to be made to or on behalf of Defendant, made such payments, and has been damaged.

11.    Because of these false or fraudulent claims submitted or caused to be submitted by Defendants, the United States has been damaged in an amount to be determined at trial.

**WHEREFORE, Relator, on behalf of himself as well as the United States requests the following relief:**

    a.   A judgment against Defendants, joint and several, in an amount equal to all damages due to the Government, including treble damages, under the FCA;

    b.   A judgment against Defendants, joint and several, for all civil penalties due to the Government for Defendant's violations of the FCA;

    c.   That Relator recover from Defendants, joint and several, all costs of this action, with interest, including the cost to the Government for its expenses related to this action;

    d.   That Relator recover from Defendants, joint and several, all reasonable attorneys' fees in bringing this action;

    e.   That Relator be awarded the maximum amount of the proceeds of this action as allowed under 31 U.S.C. § 3730, and/or any other applicable provision of law;

    f.   That a trial by jury be held on all issues so triable;

    g.   An award of pre- and post-judgment interest; and

    h.   Such other and further relief to Relator and/or the United States of America as this Court may deem just and proper.

**REQUEST FOR TRIAL BY JURY**

Relator hereby requests a trial by jury.

COMPLAINT and JURY DEMAND - 23

**Teller Law**
300 Lenora St. #1471
Seattle, WA 98121
(206) 324-8969  steve@stellerlaw.com

1    Dated: June 3, 2024

2                          By:     _____/s/ Stephen Teller_____

3                                Stephen A. Teller, WSBA #23372

4                                300 Lenora St. #1471
                                Seattle, WA  98121

5                                Telephone:   206 324 8969
                              Email:       steve@stellerlaw.com

6                                *Counsel for Plaintiff Relator*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

COMPLAINT and JURY DEMAND - 24

Exhibit A

Corporations and Charities System

Corporations and Charities Filing System

## BUSINESS SEARCH RESULTS

| Business Name | UBI# | Business Type | Principal Office Address | Registered Agent Name | Status | Nonprofit EIN |
|---|---|---|---|---|---|---|
| CONCERNED TAXPAYERS ACCOUNTABILITY CENTER | 604 391 627 | WA NONPROFIT CORPORATION | 277 STEWART RD SW, PACIFIC, WA, 98047-2155, UNITED STATES | MICHELLE COWGER | ACTIVE | 83-3943917 |
| GB CALDWELL LLC | 604 765 959 | WA LIMITED LIABILITY COMPANY | 277 STEWART RD SW, PACIFIC, WA, 98047-2155, UNITED STATES | MICHELLE COWGER | ACTIVE | |
| GB EDGEWOOD LLC | 604 091 357 | WA LIMITED LIABILITY COMPANY | 277 STEWART RD SW, PACIFIC, WA, 98047, UNITED STATES | MICHELLE COWGER | ACTIVE | |
| GB MOUNT VERNON LLC | 603 508 221 | WA LIMITED LIABILITY COMPANY | 277 STEWART RD SW, PACIFIC, WA, 98047-2155, UNITED STATES | MICHELLE COWGER | ACTIVE | |
| GB REDDING LLC | 605 282 954 | WA LIMITED LIABILITY COMPANY | 277 STEWART RD SW, PACIFIC, WA, 98047-2155, UNITED STATES | MICHELLE COWGER | ACTIVE | |
| GB RIDGEFIELD LLC | 603 518 816 | WA LIMITED LIABILITY COMPANY | 277 STEWART RD SW, PACIFIC, WA, 98047-2155, UNITED STATES | GB RIDGEFIELD LLC | ACTIVE | |
| GB SOUTH CAMPUS LLC | 604 902 086 | WA LIMITED LIABILITY COMPANY | 277 STEWART RD SW, PACIFIC, WA, 98047-2155, UNITED STATES | GB SOUTH CAMPUS LLC | ACTIVE | |
| GB SPOKANE LLC | 603 491 712 | WA LIMITED LIABILITY COMPANY | 277 STEWART RD SW, PACIFIC, WA, 98047-2155, UNITED STATES | MICHELLE COWGER | ACTIVE | |
| GB TRUCK PROPERTIES LLC | 603 491 129 | WA LIMITED LIABILITY COMPANY | 277 STEWART RD SW, PACIFIC, WA, 98047-2155, UNITED STATES | MICHELLE COWGER | ACTIVE | |
| GB UNION GAP LLC | 603 491 748 | WA LIMITED LIABILITY COMPANY | 277 STEWART RD SW, PACIFIC, WA, 98047-2155, UNITED STATES | MICHELLE COWGER | ACTIVE | |
| GORDON MEDFORD LLC | 601 976 432 | WA LIMITED LIABILITY COMPANY | 277 STEWART RD SW, PACIFIC, WA, 98047-2155, UNITED STATES | MICHELLE COWGER | ACTIVE | |
| GORDON PACIFIC LLC | 602 011 694 | WA LIMITED LIABILITY COMPANY | 277 STEWART RD SW, PACIFIC, WA, 98047-2155, UNITED STATES | MICHELLE COWGER | ACTIVE | |

5/15/24, 6:58 PM

Corporations and Charities System

| Business Name | UBI# | Business Type | Principal Office Address | Registered Agent Name | Status | Nonprofit EIN |
|---|---|---|---|---|---|---|
| GORDON SALT LAKE LLC | 601 976 433 | WA LIMITED LIABILITY COMPANY | 277 STEWART RD SW, PACIFIC, WA, 98047-2155, UNITED STATES | MICHELLE COWGER | VOLUNTARILY DISSOLVED | |
| GORDON TRUCK CENTERS, INC. | 600 633 770 | WA PROFIT CORPORATION | 277 STEWART RD SW, PACIFIC, WA, 98047-2155, UNITED STATES | GORDON TRUCK CENTERS, INC | ACTIVE | |
| GORDON TRUCK LEASING, LLC | 604 928 823 | WA LIMITED LIABILITY COMPANY | 277 STEWART RD SW, PACIFIC, WA, 98047-2155, UNITED STATES | GORDON TRUCK CENTERS, INC | ACTIVE | |
| GTC EQUIPMENT FINANCE LLC | 604 482 385 | WA LIMITED LIABILITY COMPANY | 277 STEWART RD SW, PACIFIC, WA, 98047-2155, UNITED STATES | GORDON TRUCK CENTERS, INC | ACTIVE | |
| NORTHWEST CAPITAL ADVISORS LLC | 604 921 727 | WA LIMITED LIABILITY COMPANY | 277 STEWART RD SW, PACIFIC, WA, 98047-2155, UNITED STATES | MICHELLE COWGER | ACTIVE | |
| PONDEROSA LLC | 604 815 914 | WA LIMITED LIABILITY COMPANY | 277 STEWART RD SW, PACIFIC, WA, 98047-2155, UNITED STATES | MICHELLE COWGER | ACTIVE | |
| S & S NAMPA LLC | 604 776 718 | WA LIMITED LIABILITY COMPANY | 277 STEWART RD SW, PACIFIC, WA, 98047-2155, UNITED STATES | MICHELLE COWGER | ACTIVE | |
| S AND S IDAHO LLC | 603 239 038 | WA LIMITED LIABILITY COMPANY | 21309 SNAG ISLAND DR E, LAKE TAPPS, WA, 98391, UNITED STATES | MICHELLEDAHLEN | ADMINISTRATIVELY DISSOLVED | |
| S AND S REAL ESTATE LLC | 601 976 444 | WA LIMITED LIABILITY COMPANY | 277 STEWART RD SW, PACIFIC, WA, 98047-2155, UNITED STATES | MICHELLE COWGER | ACTIVE | |

Page 1 of 1, records 1 to 22 of 22

Back